UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALIOUNE B. SECK,

        Petitioner,

                                      Case No. 4:04-cv-10

v.                                         Hon. Wendell A. Miles

KENNETH T. MCKEE,

        Respondent.

_____/

### REPORT AND RECOMMENDATION

Petitioner, currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### Background

Following a jury trial, petitioner was convicted of six counts of first-degree criminal sexual conduct ("CSC"), M.C.L § 750.520b, and one count of first-degree home invasion, M.C.L. § 750.110a(2). Petitioner was sentenced to six concurrent terms of 210 to 480 months imprisonment for the CSC convictions and a consecutive term of seven to twenty years imprisonment for the home invasion conviction.

Petitioner raised two issues in his direct appeal to the Michigan Court of Appeals:

I.     Should petitioner's convictions be reversed because there was insufficient evidence to find for the offenses of criminal sexual conduct and home invasion?

II.    Should petitioner's convictions be reversed because he was denied effective assistance of counsel where the jury was not instructed on the issue of identification?

The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Seck*, No. 226576 (Mich. App. Apr. 19, 2002).  Petitioner raised these two issues in a pro se application for leave to appeal to the Michigan Supreme Court, which was denied.  *People v. Seck*, No. 121731 (Mich. Jan. 31, 2003).

In his habeas corpus petition, petitioner states two issues as grounds for habeas relief:

I.      [Insufficient] evidence to find for the crime of [c]riminal [s]exual [c]onduct and [h]ome [i]nvasion

II.     Ineffective assistance of counsel

Petition at 3.

## Discussion

### I.      Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the provisions of 28 U.S.C. § 2254(d), which provides in

pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 342 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, 426 F.3d at 342, *citing Williams*, 529 U.S. at 412-13.

A determination of a factual issue by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

## II.   Sufficient evidence supported petitioner's conviction for First-Degree Criminal Sexual Conduct (CSC)

Petitioner contends that his convictions for first-degree CSC are not supported by constitutionally sufficient evidence. Evidence is sufficient to support a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added). The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

M.C.L. § 750.520b defines first-degree CSC as follows:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists: . . .

(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes but is not limited to any of the following circumstances:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion. . .

M.C.L. § 750.520b.

The Michigan Court of Appeals addressed the sufficiency of the evidence for petitioner's CSC convictions as follows:

Defendant argues that there was insufficient evidence to support his convictions. A challenge to the sufficiency of the evidence requires us to determine "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v. Nowack,* 462 Mich. 392, 399; 614 NW2d 78 (2000).

Defendant does not take issue with the evidence that establishes that the victim was penetrated in a sexual manner six times against her will by a man wielding a knife and threatening to kill or kidnap her; rather, he argues specifically that there was insufficient evidence to identify him as the attacker. We disagree. The victim testified that the man who assaulted her was a "tall Black man, skinny, had a white T-shirt on" and wore her ski jacket, as well as gym shorts and white tennis shoes. White tennis shoes were located in defendant's apartment. The victim also testified that her attacker had a distinct body odor. The victim described his strong body odor to Kalamazoo Department of Public Safety Detective Amy Hicok during an interview. Hicok testified that when she questioned defendant she noticed his "bad body odor." The victim also testified that her attacker engaged in an extensive conversation and she noticed his distinct accent. Hicok noticed defendant's distinct accent when she spoke with him. Most significantly, however, the victim testified that on several occasions she was able to clearly see her attacker. Although the lights were not on in her bedroom, her blinds were open and it was bright enough for her to see her attacker's features. She was able to look at her attacker's face for ten minutes while he had forced intercourse with her the first time. The victim was again face-to-face with her attacker as he attempted intercourse with her a second time. Later, the victim was allowed to turn on a light and get dressed. During the fifteen minutes that the lights were on, she was only "a couple feet" from her attacker and she looked him in the face. Again around 6:00 a.m. the victim could see her attacker clearly and could look him in the eye because light was beginning to shine through the living room windows and a small, fluorescent light over the eating area in the kitchen was on. As the two left the victim's apartment, they walked through the lighted hallway where the victim was able to see her attacker again; she could also see his face once they were outside because it was dawn. The victim was with her attacker for three hours--from approximately 3:00 a.m. to approximately 6:00 a.m. Furthermore, she quickly identified him in a photographic lineup provided by Detective Hicok. The victim testified that she was "sure" that defendant was the perpetrator and that she would never forget his face. She told Hicok that, on a scale of 1 to 10, her certainty scored a "9."

Moreover, DNA evidence revealed that defendant could not be excluded as a contributor to the DNA found on the vaginal swab sample taken from the victim. To the extent that defendant contends that the victim's testimony was "questionable," that is a credibility determination; this Court should not interfere with the jury's role

of determining the weight of evidence or the credibility of witnesses. *People v. Avant,* 235 Mich.App 499, 506; 597 NW2d 864 (1999). Thus, the prosecutor presented sufficient evidence to support beyond a reasonable doubt the six jury-based convictions for first-degree criminal sexual conduct.

*Seck*, No. 226576, slip op. at 1-2.

### A.      Trial exhibits

First, petitioner claims that "absolutely none" of the exhibits offered by the prosecution at trial "pointed to [him] as the actual perpetrator in this case." Petition at 7. Petitioner refers to the following exhibits: Exhibit 1(a map of the neighborhood in which the crimes allegedly occurred); Exhibit 2 (a photograph of victim's bed and jacket which petitioner was allegedly wearing); Exhibit 3 (a photograph of victim's bedroom from a different perspective); Exhibit 4 (the shoes which the petitioner allegedly wore the night in question); Exhibit 5 (a CSC kit conducted on the victim after the alleged crimes); Exhibit 6 (a blood kit conducted on evidence collected from the victim after the alleged crimes); and Exhibit 8 (the curriculum vitae of the DNA expert who testified at trial). Petitioner contends that all of these exhibits are "irrelevant evidence" and do not "make the existence of an element of a crime more probable than it would be without them." *See* Trial Trans. II at 4, Petition at ¶ 14.

Petitioner appears to contest the admission of these exhibits on grounds of relevancy. Under Michigan law, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.  Federal habeas relief does not lie for errors of state law unless the habeas petitioner can demonstrate that the alleged error denied him a fundamentally fair trial. *Estelle v. McGuire,* 502 U.S. 62,  67-68 (1991); *Lewis v. Jeffers*, 497 U.S.

6

764, 780 (1990).  Petitioner has made no showing that the admission of these exhibits denied him a fundamentally fair trial. Contrary to petitioner's contentions, Exhibits 1-6 and 8 contribute to the government's case against him: the map and photographs provide a more detailed look at the scene of the alleged crimes; the shoes provide corroboration for the victim's identification of the petitioner as the assailant; the CSC and blood kits provide corroboration of the victim's claim that she was sexually assaulted; and the curriculum vitae of the DNA expert serves to bolster the expert's credibility as a witness.

### B.    DNA evidence

Next, petitioner contends that Exhibits 7 (DNA chart identifying DNA samples obtained from the CSC and blood kits taken from the victim which do not exclude the defendant) and 9 (a lab report) are insufficient to support his convictions.  The court disagrees. This DNA evidence did not exclude petitioner as the assailant and increased the likelihood that he committed the crime. Such circumstantial DNA evidence is admissible to support a conviction. *See e.g., United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004) (finding that DNA evidence which established that the defendant fell into a category containing 1% of the population which could have committed the crime was "essentially equivalent to finding that the last two digits of a license plate of a car owned by defendant matched the last two numbers of a license plate of a getaway car. It would be some evidence - not conclusive, but certainly admissible.").

### C.    Victim's identification of petitioner

### 1.    The victim's testimony at trial

Next, petitioner contests the victim's identification of him as the assailant.  The victim identified petitioner as the assailant at the trial. Trial Trans. II at 30-31, 47.   The uncorroborated testimony of a single witness is sufficient to support a criminal conviction. *See United States v. Johnson*, 106 Fed. Appx. 461, 465 (6th Cir. 2004) ("the uncorroborated testimony of a single witness is a sufficient basis for a federal conviction"); *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985) (the testimony of a single, uncorroborated rape victim sufficient to support conviction); *United States v. Hoskins*, 628 F.2d 295, 296 (5th Cir. 1980) (a conviction can be based on the "uncorroborated testimony of a single witness").   Accordingly, the victim's in-court identification is sufficient to support the convictions.

### 2.    Petitioner's height and weight

Next, petitioner claims that there is a discrepancy between the description the victim originally gave to the detectives at the scene (a "skinny black man" who was a "couple" of inches taller than her, with protruding ribs) and petitioner's physical appearance. Petition at ¶ 14.  The court notes that petitioner's self-description of his height and weight are not supported by the record. In his answer, petitioner states that he is 6'3" tall and weighs 220 pounds.  Petitioner's Answer at 2-3. Petitioner states that the victim was 5'8", that she identified an attacker that was "a couple of inches" taller than her, and that the attacker was "skinny to the point one could feel his ribs." *Id.*  Petitioner contends that he is more than "a couple of inches" taller than the victim and at 220 pounds is not "skinny." *Id.*

8

As an initial matter, the record is mute as to petitioner's weight.  Petitioner gave the following testimony relevant to the identification issue: he is from the African country of Senegal; he speaks French and African dialects; and he is 6'3" tall. Trial Trans. III at 69-72.  The jury had ample opportunity to view both petitioner and the victim at the trial.  The jury could evaluate the victim's testimony regarding petitioner's height and weight, and observe whether petitioner appeared "skinny"  or not, and could observe his height relative to the victim.  After viewing all of the evidence, the jury found the victim's identification of the petitioner to be credible.  Credibility determinations are properly left to the jury as trier of fact and are to be afforded "special deference" by this court. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985). Accordingly, the court should defer to the jury's finding on this credibility issue.

### 3.        Petitioner's body odor

Next, petitioner states that the victim did not recall that the assailant had body odor at the preliminary examination, but later testified about the body odor at trial.  *Id.* at 3. At the preliminary examination, the victim testified: that the assailant woke her up sometime after 3:00 a.m., grabbed her throat and placed a knife at her throat; that she had cut her finger on the knife; that the lights were not on but that it was pretty bright out with the moonlight; that the assailant had oral and vaginal sex with her six times in her bedroom and bathroom; that the first vaginal sex lasted for ten minutes while she was lying in bed; that the assailant was skinny because she could feel the outline of his ribs; that he was a black man; that he had a heavy accent; that she had met a student from Africa and asked petitioner if he was from Africa; that "he got defensive" when asked about being from Africa; that shortly after 5:00 a.m. she told him that she had to go to work; that he allowed her to get dressed; that he picked out a shirt for her to wear; and that the lights were on in

her apartment while she was getting dressed.  Prel. Exam. Trans. at 10-21.  When asked "Was there anything unusual about the way this person smelled?" the victim testified "No."  *Id.* at 23.

At trial, the victim gave substantially the same testimony[1], with the exception that the victim testified that the assailant had an odor:

> Q:    Any type of odor or anything?
>
> A:    I could tell he had an odor.  I can't say what kind of odor.  He just had a distinct smell to him.
>
> Q:    Would you describe it as body odor or --
>
> A:    Probably his body odor.

Trial Trans. II at 24.

Petitioner does not explain how the victim's testimony regarding his body odor affected her identification.  On cross-examination, the victim testified that she identified petitioner by his face rather than his "general appearance"  ("his face isn't gonna disappear anytime; I will remember it forever").  Trial Trans. II at 56.  Defense counsel did not attempt to impeach the victim with this minor omission from the preliminary examination testimony.   In short,  nothing in the record indicates that the victim relied upon smelling petitioner to identify him as the assailant.

The only other testimony related to petitioner's odor was that of Detective Hicok. The detective testified that on August 3rd, the victim told her that the assailant "smelled real bad, like body odor."  Trial Trans. III at 22.  Defense counsel objected to the detective's testimony as hearsay.  *Id.* at 22.  The trial judge sustained counsel's objection and the prosecutor ended that line of questioning.  *Id.* at 22-23.  Later that day, Detective Hicok contacted the manager of the apartment

---

[1]  *See* Trial Trans. II at 21-38, 41-42.

10

complex, who gave her names of individuals that matched the victim's description of her assailant. *Id.* at 23-25.  On August 5th, the detective contacted four or five African students at the apartment complex, including petitioner.  *Id.* at 25-26, 42.  Based upon the victim's description, Detective Hicok was looking for a person who, among other things, had bad body odor.  *Id.* at 22, 26-27.  The detective testified that petitioner had a "bad body odor" and that she took his photograph.  *Id.* at 26-27.  Defense counsel did not object to the detective's testimony on this issue. Detective Hickok's testimony indicates that she used the victim's description of an African student with bad body odor to narrow the search for suspects, not to identify petitioner as the perpetrator, which the victim did without reference to odor.

Accordingly, the fact that the victim failed to mention petitioner's body odor at the preliminary examination provides no basis for habeas relief.

### 4.    The photo lineup

Next, petitioner points out that the victim rated the certainty of her identification of him on the photographic lineup as a "9" on a scale of 1 to 10, Petition at ¶ 14.  Petitioner contends that the victim's lack of certainty proves that she mis-identified him as the assailant.  The court disagrees.  Detective Hicok's testimony regarding the victim's reaction to the photo lineup was only one part of the evidence.[2]  Detective Hicok testified that the morning of August 3rd, she showed the victim photographs of six black men, but the victim did not identify any of them as the attacker. Trial Trans. III at 23-24.  Petitioner's photo was not among the six.  On August 5th, however, when she was shown 26 photographs of black men, the victim came out of her seat and became very

---

[2]  Detective Hicok's testimony appears in Trial Trans. III at pages 19-43.

excited when shown petitioner's photograph, and that after studying all of the photographs for about one minute, identified petitioner. Trial Trans. III at 34-38. The victim testified that she "jumped up" when she saw petitioner's photo. Trial Trans. II at 46. After the victim identified petitioner from the 26 photographs, Detective Hicok asked the victim "on a scale of 1 to 10 how certain she was that that was him," to which the victim responded "9." Trial Trans. III at 41. Contrary to petitioner's contention, the victim's ability to identify him from two separate photo lineups containing 32 photographs, with a "9 out of 10" certainty, and her strong reaction to his photograph, indicates that she recognized petitioner as the assailant.[3]

### 5.     Lack of fingerprints

Finally, petitioner states that the lab specialist who obtained fingerprints from the scene discarded them after checking them against petitioner's and failing to obtain a match. Petition at ¶ 14. Apparently, petitioner contends that the fingerprint evidence belonged to the victim's assailant and absolved him of the crime. Petitioner's contention is not supported by the record. Brett E. Apelgren, a crime lab specialist at the Kalamazoo Department of Public Safety, testified that he found four fingerprints at the rape scene from the medicine cabinet and the bathroom counter,  but that none of them matched known fingerprints of the petitioner. Trial Trans. II at 135, 141. Officer Apelgren testified that he just checked the fingerprints against Mr. Seck. *Id.* at 137. Petitioner's allegations that Officer Apelgren destroyed the fingerprint evidence, that this evidence was favorable to the defense and that this destroyed evidence was from the "actual attacker," is mere speculation

---

[3] Petitioner restricts his claim to an issue of the victim's credibility. He does not claim that the identification process was so flawed as to violate his due process rights. *See, e.g., Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) (unnecessarily suggestive identification procedure may violate suspect's due process).

not founded in any evidence admitted into the record.  *See* Petition at ¶ 14.

### D.    Petitioner's conviction is supported by sufficient evidence

The Michigan Court of Appeals properly found that sufficient evidence supported the convictions for first-degree criminal sexual conduct. Taken alone, the victim's identification of petitioner at trial would warrant a reasonable juror to find petitioner guilty beyond a reasonable doubt.  This was not a brief encounter, but rather a prolonged exposure of nearly three hours during which the victim had adequate time and motivation to remember the assailant's face. Furthermore, petitioner's DNA could not be excluded from the sample taken from the victim and other evidence existed which connected petitioner to a description of the assailant (e.g., white tennis shoes, African accent). *Seck*, No. 226576 at 1-2.

Viewed in the light most favorable to the prosecution, a rational trier of fact could have found petitioner guilty of the offense beyond a reasonable doubt. The Michigan Court of Appeals' resolution of the issue was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### III.    Sufficient evidence supported petitioner's conviction for First-Degree Home Invasion

Petitioner also contends that there is insufficient evidence to support his conviction for home invasion. The Michigan Court of Appeals addressed this issue as follows:

> Similarly, there was sufficient evidence to support defendant's conviction of home invasion beyond a reasonable doubt. MCL 750.110a(2) provides that an individual

13

is guilty of first-degree home invasion if he or she merely:

> []enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

Although there was no evidence of breaking and entering, defendant did not have permission to enter the victim's dwelling, which is all that is required under the statutory provision. Moreover, MCL § 750.110a(1)(b)(*ii*) defines a "dangerous weapon" to include a knife. Thus, the victim's testimony that defendant threatened her with a knife supports a finding that he was armed with a dangerous weapon while inside the victim's dwelling. Moreover, the victim was lawfully present in the dwelling when defendant entered, was present, and exited. In addition, defendant was found guilty of committing six felonies while in the dwelling. Accordingly, the evidence was plainly sufficient to support defendant's first-degree home invasion conviction. *Nowack. supra* at 399.

*Seck*, No. 226576 at 2-3.

Petitioner contends that there is insufficient evidence to support the first-degree home invasion conviction because (1) there was no forced entry into the victim's apartment, and (2) the victim misidentified him as the assailant. Petition at ¶ 14. Under Michigan law, "forced entry" is not an element of the crime of home invasion. *See Seck*, No. 226576 at 2-3. While petitioner may disagree with the Michigan courts, this is the law which applicable to petitioner's conviction. A sufficiency of the evidence claim "does not invite federal habeas courts to engage in a substantive analysis of state statutory terms" or "transform[] federal habeas courts into super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). *See also Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994) ("[t]he essential elements of a state crime are defined by state law");

14

*Cox v. Maxwell*, 366 F.2d 765, 767 (6th Cir. 1966) ("[i]t is within the province of a state to define crimes and to fix the punishment therefor").  The victim's testimony established that petitioner did not have permission to enter her apartment and rape her.

Petitioner's claim of misidentification or mistaken identity is no more successful with respect to his conviction for home invasion then it is for his CSC convictions. Viewed in the light most favorable to the prosecution, a rational trier of fact could have found petitioner guilty of this offense beyond a reasonable doubt.

The Michigan Court of Appeals' resolution of the issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

## IV.    Ineffective Assistance of Counsel

Next, petitioner contends that he was denied the effective assistance of counsel because his counsel failed to obtain a jury instruction related to the victim's identification of the assailant, CJI2d 7.8(4).[4]  Petitioner states that the instruction should have been given because of the

---

[4] The jury instruction at issue, CJI2d 7.8, provides as follows:

(1) One of the issues in this case is the identification of the defendant as the person who committed the crime. The prosecutor must prove beyond a reasonable doubt that the crime was committed and that the defendant was the person who committed it.

(2) In deciding how dependable an identification is, think about such things as how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness had seen or known the offender before, how far away the witness was, whether the area was well-lighted, and the witness's state of mind at that time.

victim's faulty physical description and her inconsistent testimony at the preliminary examination

regarding the assailant's body odor.  *See* Petition and Petitioner's Answer.   The Michigan Court of

Appeals addressed petitioner's claim of ineffective assistance of counsel as follows:

> Next, defendant argues that he was denied his constitutional right to effective assistance of counsel because counsel failed to request an instruction on identification, CJI2d 7.8. Because defendant did not request a new trial or an evidentiary hearing on this issue, our review is limited to the facts on the record. *People v. Snider,* 239 Mich.App 393, 423; 608 NW2d 502 (2000). A successful claim of ineffective assistance of counsel requires a defendant to "show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted the defendant." *Id.* at 423-424. Reversal is not required where the jury instructions, taken as a whole, sufficiently protect the defendant's rights. *People v. Moldenhauer,* 210 Mich.App 158, 159; 533 NW2d 9 (1995).

> The identification instruction invites the jury to consider: the quality and duration of the witness's observations of the offender; whether the witness had previously seen the offender; the proximity of the witness to the offender at the time of the observations; the lighting of the area when the witness observed defendant; and the witness's state of mind at the time of the observation. CJI2d 7.8(2). The instruction further invites the jury to consider the circumstances surrounding the witness's identification of the offender, such as the time between the crime and the identification, the witness's confidence in the identification of the offender, and the witness's state of mind at the time of the identification. CJI2d 7.8(3). The instruction notes that the witness's failure to either identify the witness or provide a consistent description may be relevant to the inquiry. CJI2d 7.8(4). [FN1] Finally, the jury

---

(3) Also, think about the circumstances at the time of the identification, such as how much time had passed since the crime, how sure the witness was about the identification, and the witness's state of mind during the identification.

[(4) You may also consider any times that the witness failed to identify the defendant, or made an identification or gave a description that did not agree with (his / her) identification of the defendant during trial.]

(5) You should examine the witness's identification testimony carefully. You may consider whether other evidence supports the identification, because then it may be more reliable. However, you may use the identification testimony alone to convict the defendant, as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime.

16

instruction reminds the jury that it must carefully consider the witness's reliability. CJI2d 7.8(5).

At first glance, it would appear that the effort undertaken by defense counsel to raise questions regarding the victim's identification of defendant makes it curious that the aforementioned jury instruction was not requested. However, upon review of the jury instruction, an argument could be made that the jury instruction was worse for defendant because most of the individual factors that the jury is invited to consider weigh in favor of the victim's identification. For example, the victim testified that, despite the absence of normal lighting, she was able to get a very good look at defendant at times during the incident because of the light passing through her open blinds. She further testified that she got an even better look at defendant during the approximately fifteen minutes near the end of the incident after she turned [sic] a light to get dressed. She testified that the unfortunate events took place over a period of nearly three hours, preventing any concerns that her observations were fleeting. During the incident, defendant was obviously in close proximity to her. After the incident, she was able to observe defendant at close range both inside her apartment and outside when he followed her to her car.

In addition, although there was evidence suggesting that the victim was quite upset by the time she sought help from her friends, we note that her state of mind near the end of the incident was clear enough to outsmart defendant twice--by convincing him that she had to get ready for work and by providing him a fake telephone number. Finally, we note that the victim's identification of defendant at the end of the incident is quite distinct, from a reliability standpoint, from an individual's unexpected witnessing of a crime. Thus, although the victim had never seen defendant before, the factors that the jury was invited to consider in CJI2d 7.8(2) supported the reliability of the identification.

Along the same lines, the victim was unwavering in her identification. She failed to identify anyone in a photographic lineup not containing defendant's photograph, but did identify him out of twenty-six photographs in a subsequent lineup. Both of these photographic lineups occurred within days of the incident. There was no evidence that her state of mind was remarkable at the time of the identification, except that she became visibly upset after seeing defendant's photograph. If anything, this fact supports the reliability of her identification. In fact, the only evidence that even remotely undermines the victim's identification of defendant was that, on a scale of 1 to 10, her certainty of identification at the time of the photographic lineup was "only" a "9."

Thus, after comparing the victim's testimony to the jury instruction, it actually appears that defense counsel may have been exercising sound trial strategy by not requesting the identification instruction. Instead, defense counsel was able to introduce challenges to the victim's identification without providing the jury with factors that, ultimately, support the victim's identification. In other words, a factor-by-factor review of the victim's identification, as invited by the jury instruction, was

not beneficial to defendant's challenge to the witness's identification. Thus, even if we were persuaded that defense counsel should have requested the jury instruction, it is not reasonably probable that, but for failing to request the instruction, the jury would not have convicted defendant. *Snider, supra* at 423-424. Consequently, we reject defendant's contention that he was deprived of his constitutional right to effective assistance of counsel.

[FN1] However, CJI2d 7.8(4) is only to be given when supported by the evidence.

*Seck*, No. 226576 at 3-4.

In *Strickland v. Washington*. 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

"The Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3 (6th Cir. 1998), *citing Strickland*, 466 U.S. at 690. Neither does the Constitution guarantee petitioner "an excellent lawyer" or a "good lawyer." *Id.* at *5, *citing Strickland*, 466 U.S. at 687.  Rather, "the Sixth Amendment right to the effective assistance of counsel entitles [petitioner] to nothing more than a 'reasonably competent attorney' whose performance falls 'within the range of competence demanded of attorneys in criminal cases.'" *Id*.  A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See  McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996);

18

*O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994).  Accordingly, petitioner must "overcome

a presumption that the challenged action might be considered sound trial strategy." *Id.*

      While the trial court did not instruct the jury with CJI2d 7.8, the court gave the jury

a general instruction regarding witness credibility:

> There is no fixed set of rules for judging whether you believe a witness, but
> it may help you to think about these questions:
>
> Was the witness able to see or hear clearly?
>
> How long was the witness watching or listening?
>
> Was anything else going on that might have distracted the witness?
>
> Did the witness seem to have a good memory?
>
> How did the witness look and act while testifying?
>
> Did the witness seem to be making an honest effort to tell the truth or
> did the witness seem to evade the questions or argue with the
> lawyers?
>
> Does the witness's age and maturity affect how you judge his or her
> testimony?
>
> Does the witness have any bias, prejudice or personal interest in how
> this case is decided?
>
> Have there been any promises, threats, suggestions   or other
> influences that affected how the witness testified?

Trial Trans. III at 125.

      Under Michigan law, CJI2d 7.8(4) is a specific instruction that is only given when

the consistency of witness identification is at issue. *See* notes to CJI2d 7.8.  When a witness has

offered a consistent identification throughout the criminal process, CJI2d 7.8(4) is neither permitted

nor necessary. *See People v. Sizemore*, Nos. 234420, 234422, 2003 WL 231319 at *1 (Mich.App.

19

2003) (victim's consistent description of suspect rendered (4) instruction unnecessary). Even when some inconsistency exists among a witness' descriptions in a case, the court's failure to instruct the jury as to CJI2d 7.8(4) is harmless error if there is no reason to believe that the instruction would have made a difference at trial. *See People v. Smith*, No. 247826, 2004 WL 1586993 at *5 (Mich. App. July 15, 2004) (failure to instruct jury with CJI2d 7.8(4) following inconsistent witness testimony held to be harmless error because the jury was fully aware that the witness in question was the only identification witness, and that the jury needed to evaluate the identification testimony carefully).

In addition, CJI2d 7.8 is not necessary or proper when "the evidence, the general instruction given, and counsel's closing argument, including his examples and the stress on common sense, put the [witness identification] issue squarely before the jury." *Millender v. Adams*, 187 F. Supp. 2d 852, 874 (E.D.Mich. 2002). *See also People v. Lee*, 243 Mich.App. 163, 185 (Mich.App. 2000) (holding that failure of defense counsel to request CJI2d 7.8 or a similar instruction pertaining to identification did not constitute ineffective assistance of counsel when "the instructions as given were adequate," and when the jury was "aware that identification was an issue," but "clearly rejected defendant's claim that the victim's identification was not reliable"); *People v. Zavorski*, No. 227973, 2002 WL 31187865 at *7 (Mich. App. Oct. 1, 2002) (holding that defense counsel was not ineffective in failing to request CJI2d 7.8 when counsel ensured through other means that the jurors were aware of the weaknesses in witness testimony).

Here, petitioner's counsel presented a consistent case throughout trial which questioned the veracity of the victim's identification of petitioner. *See Seck*, No. 226576 at 4 ("defense counsel was able to introduce challenges to the victim's identification without providing

20

the jury with factors that, ultimately, support the victim's identification"). *See, e.g.*, Trial Trans. II at 49 (petitioner's counsel establishing the victim's background with "Black people" so as to bear on the credibility of her identification of petitioner as the individual who raped her), Trial Trans. III at 105 (petitioner's counsel asking the jury, during closing arguments, "How many times have you walked up to somebody thinking they were somebody else and misidentified them?," and suggesting that the victim had previously seen petitioner around town and had misidentified him as the culprit in this case). Accordingly, petitioner's counsel was not deficient for failing to request CJI2d 7.8.

Furthermore, petitioner was not prejudiced by counsel's actions. Counsel's trial strategy of questioning the victim's ability to identify the assailant and the court's general instructions regarding witness credibility sufficiently addressed the identification issue. Petitioner does not demonstrate how CJI2d 7.8 would have produced a different result. Indeed, as the Michigan Court of Appeals observed, counsel's decision not to request CJI2d 7.8 could be considered sound trial strategy given the victim's ability to look at petitioner for approximately three hours. Accordingly, petitioner was not prejudiced by counsel's failure to obtain this jury instruction.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

**<u>Recommendation</u>**

I respectfully recommend that petitioner's habeas petition be DENIED. Rule 8,

Rules Governing § 2254 Cases in the United States District Courts.

Dated:  July 17, 2006                                   /s/ Hugh W. Brenneman, Jr.

                                                                Hugh W. Brenneman, Jr.
                                                                United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed
with the Clerk of the Court within ten (10) days after service of the report.  All objections and
responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file
written objections within the specified time waives the right to appeal the District Court's order.
*Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).